1  **Matthew S. Parmet** (CSB # 296742)
   matt@parmet.law
2  **PARMET PC**
3  340 S. Lemon Ave., #1228
   Walnut, CA 91789
4  phone 310 928 1277

5  **Attorneys for Plaintiff**

6

7

8                    **UNITED STATES DISTRICT COURT**
                     **CENTRAL DISTRICT OF CALIFORNIA**
9

| | |
|---|---|
| 10 **RICARDO VIDAUD, individually and on behalf of all others similarly situated,** | Case No. 2:22-cv-02713 |
| 11 | **Plaintiff's Original Class and Collective Action Complaint for Damages** |
| 12 **Plaintiff,** | |
| 13 **vs.** | 1. Failure to pay wages (CAL. LAB. CODE §§ 510, 1194, 1194.5; IWC Wage Orders) |
| 14 **PEPSICO, INC. and DOES #1 through #50, inclusive,** | 2. Violations of record keeping requirements (CAL. LAB. CODE § 226) |
| 15 | |
| 16 **Defendants.** | 3. Waiting time penalties (CAL. LAB. CODE § 203) |
| 17 | 4. Violation of Unfair Competition Law (CAL. BUS. & PROF. CODE §§ 17200, *et seq.*) |
| 18 | |
| 19 | 5. Civil penalties under the Private Attorneys General Act of 2004 (CAL. LAB. CODE §§ 2698, *et seq.*) |
| 20 | |

**PARMET PC** (vertical, left margin)

21                              **SUMMARY**

22     1.     Like many other companies across the United States, PepsiCo's timekeeping

23  and payroll systems were affected by the hack of Kronos in 2021.

24     2.     That hack led to problems in timekeeping and payroll throughout PepsiCo's

25  organizations.

26     3.     As a result, PepsiCo's workers who were not exempt from the overtime

27  requirements under California law were not paid for all hours worked and/or were not paid

28  their proper overtime premium for all overtime hours after the onset of the Kronos hack.

4. Ricardo Vidaud is one such worker for PepsiCo.

5. PepsiCo could have easily implemented a system to accurately record time and properly pay hourly and non-exempt employees until issues related to the hack were resolved.

6. But it didn't. Instead, PepsiCo did not pay their non-exempt hourly and salaried employees their full overtime premium for all overtime hours worked, as required by California law.

7. PepsiCo pushed the cost of the Kronos hack onto the most economically vulnerable people in their workforce.

8. PepsiCo made the economic burden of the Kronos hack fall on front-line workers—average Americans—who rely on the full and timely paymet of their wages to make ends meet.

9. PepsiCo's failure to pay proper wages for all hours worked, including overtime hours, violates the California Labor Codea and California law.

10. Vidaud bring this lawsuit to recover these unpaid wages and other damages owed by PepsiCo to him and PepsiCo's similar workers, who were the ultimate victims of not just the Kronos hack, but PepsiCo's decision to make their own workforce bear the economic burden for the hack.

### JURISDICTION & VENUE

11. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity of citizenship exists between the Parties and the amount in controversy exceeds $75,000.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events at issue occurred in this District.

13. Vidaud worked for PepsiCo in this District.

### PARTIES

14. **Plaintiff Ricardo Vidaud** is a natural person.

15. Vidaud was, at all relevant times, an employee of PepsiCo.

16. Vidaud began working for PepsiCo in October 2020.

17. Vidaud worked for PepsiCo in California.

18. Vidaud represent a class of similarly situated employees under California law pursuant to Federal Rule of Civil Procedure 23. This "California Class" is defined as:

> **All current or former non-exempt employees of PepsiCo, Inc. (including its subsidiaries and alter egos), who worked in California at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

19. Together, throughout this Complaint, California Class members are also referred to as the "Similarly Situated Workers."

20. **Defendant PepsiCo, Inc. ("PepsiCo")** is an foreign corporation.

21. PepsiCo does business in a systematic and continuous manner throughout California and this District.

22. PepsiCo may be served by service upon its registered agent, **CT Corporation System, 330 N. Brand Blvd., Ste. 700, Glendale, CA 91203**, or by any other method allowed by law.

23. At all relevant times, PepsiCo exerted operational control over its subsidiaries and alter egos.

24. At all relevant times, PepsiCo substantially controlled the terms and conditions of employment for workers of its subsidiaries and alter egos.

25. At all relevant times, PepsiCo had a common control and management of labor relations regarding employees of its subsidiaries and alter egos.

26. PepsiCo employed and/or jointly employed, with its subsidiaries and alter egos, Vidaud and the Similarly Situated Workers.

27. PepsiCo and its subsidiaries and alter egos are joint employers for purposes of California law.

28. Vidaud are informed and believe and on that basis allege, that at all relevant times PepsiCo and Defendants Does #1 through #50 were affiliated, and each was the principal, agent, servant, partner, officer, director, controlling shareholder, subsidiary, affiliate,

parent corporation, successor or predecessor in interest, joint ventures, and/or joint enterprises of one or more of Defendants.

29.    PepsiCo and Defendants Does #1 through #50 employed and/or jointly employed Vidaud and the Similarly Situated Workers.

30.    PepsiCo and Defendants Does #1 through #50 are joint employers for purposes of California law.

31.    Vidaud are unaware of the true names of Defendants Does #1 through #50, and so Vidaud sue those Defendants under said fictitious names pursuant to California Code of Civil Procedure section 474. *Lindley v. Gen. Elec. Co.*, 780 F.2d 797, 802 (9th Cir. 1986).

32.    Vidaud will amend this Complaint to show the true names and capacities of such fictitiously named Defendants after the same has been ascertained.

33.    Because the true names of Defendants Does #1 through #50 are currently unknown to him, Vidaud refer to such Defendants in this lawsuit collectively with their non-fictitiously named joint employers as "PepsiCo" and/or "Defendants" throughout this Complaint.

FACTS

34.    PepsiCo are a food, snack, and beverage corporation.

35.    Many of PepsiCo's employees are non-exempt hourly and salaried workers.

36.    Since at least 2021, PepsiCo has used timekeeping software and hardware operated and maintained by Kronos.

37.    On or about December 11, 2021, Kronos was hacked with ransomware.

38.    The Kronos hack interfered with the ability of its customers, including PepsiCo, to use Kronos's software and hardware to track hours and pay employees.

39.    Since the onset of the Kronos hack, PepsiCo has failed to keep accurate track of the hours that Vidaud and Similarly Situated Workers have worked.

40.    Instead, PepsiCo has used various methods to estimate the number of hours Vidaud and Similarly Situated Workers work in each pay period.

41.    For example, PepsiCo issued paychecks based on their scheduled hours, or simply duplicated paychecks from pay periods prior to the Kronos hack.

42.    As a result of PepsiCo's failure to accurately track the actual hours worked each week, employees who were non-exempt and who worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

43.    Many employees were not even paid for all their non-overtime wages for hours worked in certain workweeks.

44.    Vidaud is one of the thousands of PepsiCo employees in California affected by these pay and timekeeping practicess.

45.    Instead of paying Vidaud for the hours he actually worked (including overtime hours), PepsiCo simply paid based on estimates of time or pay, or based upon arbitrary calculations and considerations **other than** Vidaud's actual hours worked and regular pay rates, in multiple workweeks.

46.    In some instances, Vidaud was paid portions of overtime hours worked, but were not paid at the proper overtime premium of at least 1.5x or 2x his agreed rate of pay, including required adjustments for shift differentials and non-discretionary bonsuses.

47.    In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other adjustments required by law.

48.    PepsiCo know it has to pay proper overtime premiums to non-exempt hourly and salaried employees.

49.    PepsiCo know this because, prior to the Kronos hack, it routinely paid these workers for all overtime hours at the proper overtime rates.

50.    PepsiCo could have instituted any number of methods to accurately track and timely pay their employees for all hours worked.

**Parmet PC**

51. Instead of accurately tracking hours and paying employees their wages and overtime, PepsiCo decided to arbitrarily pay these employees, without regard to the overtime hours they worked or the regular rates at which they were supposed to be paid.

52. Even to the extent it did pay some overtime to affected employees, PepsiCo failed tot take into account shift differentials and non-discretionary bonuses, such that the overtime premium PepsiCo did pay, if any, was not the full overtime premium owed under the law based on the employees' agreed rate of pay.

53. It was feasible for PepsiCo to have their employees and managers report accurate hours so they could be paid the full and correct amounts of money they were owed for the work they did for the company.

54. But PepsiCo chose not to do that.

55. In other words, PepsiCo pushed the effects of the Kronos hack onto the backs of their most economically vulnerable workers, making sure that PepsiCo kept the money it owed to those employees in their own pockets, rather than take steps to make sure employees were paid on time and in full for the work they did.

56. Vidaud are two of the front-line employees who had to shoulder the burden of this decision by PepsiCo.

57. Vidaud was a non-exempt hourly employee of PepsiCo.

58. Vidaud regularly worked over 40 hours per week for PepsiCo.

59. Vidaud's normal, pre-Kronos hack hours are reflected in PepsiCo's records.

60. Since the Kronos hack, PepsiCo has not paid Vidaud for his actual hours worked each week.

61. Since the hack took place, PepsiCo has not been accurately recording the hours worked by Vidaud and its other workers.

62. Even though PepsiCo may have had Vidaud record and submit his hours, PepsiCo has not issued payment for all hours Vidaud worked.

63. Even when PepsiCo has issued payment to Vidaud for any overtime, the overtime is not calculated based on Vidaud's regular rates, as required by California law.

**PARMET PC**

64.     PepsiCo were aware of the overtime requirements of California law.

65.     PepsiCo nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Vidaud.

66.     PepsiCo's failure to pay overtime to these non-exempt workers was, and is, a willful violation of the California law.

67.     The full overtime wages owed to Vidaud and the Similarly Situated Workers became "unpaid" when the work for PepsiCo was done—that is, on Vidaud and the Similarly Situated Workers' regular paydays. *E.g.*, *Martin v. United States*, 117 Fed. Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985), *modified*, 776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

68.     At the time PepsiCo failed to pay Vidaud and the Similarly Situated Workers in full for their overtime hours by their regular paydays, PepsiCo became liable for all prejudgment interest, liquidated damages, penalties, and any other damages owed under California law.

69.     In other words, there is no distinction between late payment and nonpayment of wages under California law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

70.     Even if PepsiCo made any untimely payment of unpaid wages due and owing to Vidaud or the Similarly Situated Workers, any alleged payment was not supervised by the U.S. Department of Labor or any court.

71.     The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law. *See*, *e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682, 683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

72.     Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to PepsiCo's acts and omissions resulting in the unpaid wages in the first place.

73. Vidaud and the Similarly Situtated Workers remain uncompensated for the wages and other damages owed by PepsiCo under California law.

CLASS ACTION ALLEGATIONS

74. Vidaud incorporates all other allegations.

75. The illegal practices PepsiCo imposed on Vidaud were likewise imposed on the California Class Members.

76. Numerous other individuals who worked for PepsiCo were not properly compensated for all hours worked, as required by California law.

77. The California Class is so numerous that joinder of all members of the class is impracticable.

78. PepsiCo imposed uniform practices and policies on Vidaud and the California Class members regardless of any individualized factors.

79. Based on their experience and tenure with PepsiCo, as well as coverage of the Kronos hack, Vidaud are aware that PepsiCo's illegal practices were imposed on the California Class members.

80. California Class members were all not paid proper overtime when they worked in excess of 40 hours per week.

81. PepsiCo's failure to pay wages and overtime compensation in accordance with California law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the California Class Members.

82. Vidaud's experiences are therefore typical of the experiences of the California Class members.

83. Vidaud does not have any interest contrary to, or in conflict with, the members of the California Class. Like each member of the proposed class, Vidaud has an interest in obtaining the unpaid overtime wages and other damages owed under the law.

84. A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

85.     Absent this action, many California Class members likely will not obtain redress of their injuries and PepsiCo will reap the unjust benefits of violating California law.

86.     Furthermore, even if some of the California Class members could afford individual litigation against PepsiCo, it would be unduly burdensome to the judicial system.

87.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

88.     The questions of law and fact common to each of the California Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

> a.      Whether the California Overtime Class Members were paid overtime at 1.5 times their regular rate of pay for hours worked in excess of 40 in a workweek;
>
> b.      Whether the California Overtime Class Members were paid overtime at 1.5 times their regular rate of pay for hours worked in excess of 8 or 12 in a single day; and
>
> c.      Whether PepsiCo's failure to pay overtime at the rates required by law violated California law.

89.     Vidaud's claims are typical of the California Class members. Vidaud and the California Class members have all sustained damages arising out of PepsiCo's illegal and uniform employment policies.

90.     Vidaud does not know of any difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

91.     Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class action treatment.

**FIRST CAUSE OF ACTION—FAILURE TO PAY WAGES UNDER CALIFORNIA LAW**

92.     Vidaud incorporate each other allegation.

PARMET PC

93.     The California Labor Code requires that all employees, including Vidaud and the California Class, receive 1.5x their hourly rate as overtime premium compensation for hours worked over eight in one day. CAL. LAB. CODE § 510 (2017); IWC Wage Orders #1-2001 through #17-2001.

94.     Despite working over 8 hours a day as part of their normal and regular shift, Vidaud and the California Class did not receive proper overtime compensation for all hours worked over 8 in one day.

95.     The California Labor Code also requires that all employees, including Vidaud and the California Class, receive 2x times the overtime premium compensation for hours worked over 12 in one day. CAL. LAB. CODE § 510 (2017); IWC Wage Orders #1-2001 through #17-2001.

96.     Although Vidaud and the California Class occasionally worked over 12 hours in one day, they did not receive the "double time" compensation required by California law.

97.     The California Labor Code requires that all employees, including Vidaud and the California Class, receive 2x the overtime premium compensation for hours worked over 8 in one day, in the seventh day of a workweek. CAL. LAB. CODE §§ 510, 551–52 (2017); IWC Wage Orders #1-2001 through #17-2001.

98.     Although Vidaud and the California Class regularly worked seven days a week, for at least 12 hours a day, they did not receive the "double time" compensation required by California law for all hours over eight worked on the seventh day.

99.     This pattern, practice, and uniform administration of corporate policy regarding illegal employee compensation is unlawful and entitles Vidaud and the California Class to recover unpaid balance of the full amount of overtime wages owing, including liquidated damages, interest, attorneys' fees, and costs of suit pursuant to California Labor Code section 1194.

**SECOND CAUSE OF ACTION—VIOLATIONS OF RECORD KEEPING REQUIREMENTS**

100.     Vidaud incorporate each other allegation.

101. California Labor Code section 226 requires PepsiCo to keep accurate records regarding the rates of pay for their California employees and provide that information to Vidaud and the California Class with their wage payment.

102. Because PepsiCo failed to pay Vidaud and the California Class lawful wages, it did not maintain accurate records of Vidaud and the California Class's daily hours, gross wages earned, net wages earned, and the applicable hourly rates, and did not provide that information to Vidaud and the California Class with their wages.

103. This pattern, practice, and uniform administration of corporate policy is unlawful and entitles Vidaud and the California Class to recover all damages and penalties available by law, including interest, penalties, attorney fees, and costs of suit. CAL. LAB. CODE § 226(e).

THIRD CAUSE OF ACTION—WAITING TIME PENALTIES

104. Vidaud incorporate each other allegation.

105. At all relevant times, PepsiCo were required to pay Vidaud and the California Class all wages owed in a timely fashion at the end of employment pursuant to California Labor Code sections 201 to 204.

106. As a result of PepsiCo's alleged California Labor Code violations, PepsiCo regularly failed to pay Vidaud and the California Class their final wages pursuant to California Labor Code sections 201 to 204, and accordingly PepsiCo owes waiting time penalties pursuant to California Labor Code section 203.

107. The conduct of PepsiCo, in violation of Vidaud and the California Class members' rights, was willful and was undertaken by the agents, employees, and managers of PepsiCo.

108. PepsiCo's willful failure to provide Vidaud and the California Class the wages due and owing them upon separation from employment results in a continuation of wages up to 30 days from the time the wages were due.

109. Therefore, Vidaud and the California Class members who have separated from employment are entitled to compensation pursuant to California Labor Code section 203.

PARMET PC

## FOURTH CAUSE OF ACTION—VIOLATION OF UNFAIR COMPETITION LAW

110. Vidaud incorporate each other allegation.

111. PepsiCo has engaged, and continues to engage, in unfair and unlawful business practices in California by practicing, employing, and utilizing the employment practices outlined above by knowingly denying employees: (1) overtime wages required by California law; (2) accurate wage statements; and (3) waiting time penalties.

112. As a result of PepsiCo's failure to comply with California law, PepsiCo has also violated the California Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200, *et. seq.*, which prohibits unfair competition by prohibiting any unlawful or unfair business actions or practices.

113. The relevant acts by PepsiCo occurred within the four years preceding the filing of this action.

114. On information and belief, PepsiCo has engaged in unlawful, deceptive, and unfair business practices, pursuant to California's Business and Professions Code section 17200, *et seq.*, including those set forth above, depriving Vidaud and the California Class of minimum working condition standards and conditions under California law and IWC Wage Orders as set forth above.

115. Vidaud and the California Class are entitled to restitution for at least the following: restitution for unpaid overtime wages and unpaid California Labor Code § 203 continuation wages.

116. Vidaud and the California Class are also entitled to permanent injunctive and declaratory relief prohibiting PepsiCo from engaging in the violations and other misconduct referred to above.

117. PepsiCo are also liable for fees and costs pursuant to California Code of Civil Procedure section 1021.5 and other applicable law.

## FIFTH CAUSE OF ACTION—CIVIL PENALTIES UNDER PAGA

118. Vidaud incorporate all other allegations.

119.    Vidaud and the California Class are aggrieved employees within the meaning of California Labor Code section 2699.

120.    As aggrieved employees, Vidaud and the California Class seek to recover of civil penalties against PepsiCo pursuant to the Private Attorneys General Act of 2004 (PAGA), CAL. LAB. CODE §§ 2698, *et seq.*

121.    PepsiCo has knowingly and intentionally violated the California Labor Code and IWC Wage Orders, including by:

    a.    Failing to pay wages (CAL. LAB. CODE §§ 510, 1194, 1194.5; IWC Wage Orders #1-2001 through #17-2001);

    b.    Failing to provide compensation for missed meal and rest periods (Cal. Lab. Code §§ 226.7, 512; IWC Wage Orders #1-2001 through #17-2001);

    c.    Violating record keeping requirements (CAL. LAB. CODE § 226);

    d.    Unlawfully collecting, receiving, or withholding wages (CAL. LAB. CODE §§ 221, 225.5);

    e.    Failing to pay wages promptly following termination of employment, or when due and payable (CAL. LAB. CODE § 203).

122.    The civil penalties sought by Vidaud and the California Class include the recover of amounts specified in the respective sections of the California Labor Code, and if not specifically provided, those penalties under section 2699(f).

123.    Vidaud and the California Class seek the full amounts sufficient to recover unpaid wages, other damages, and necessary expenditures or losses incurred by Vidaud and the California Class pursuant to California Labor Code sections 210, 225.5, 226.3, 226.8, 558(a), 1197(a), 2802, and 2699.

124.    Vidaud and the California Class will allege any additional violations of the California Labor Code and IWC Wage Orders as may be disclosed in discovery and as a result of additional investigation that may be pursued in this action.

125.    Vidaud provided notice to PepsiCo of its California Labor Code and IWC Wage Orders violations on April 22, 2022.

126. On the same date, notice of these California Labor Code and IWC Wage Orders violations was provided to the California Labor and Workplace Development Agency (LWDA) as required by PAGA.

127. The notice to PepsiCo and the LWDA advised each of them of the intent to prosecute a private enforcement action to assess and recover civil penalties under PAGA if the LWDA declines to investigate or prosecute the asserted California Labor Code and IWC Wage Orders violations.

128. If the LWDA declines to investigate or prosecute, Vidaud and the California Class will pursue their PAGA claims in the course of this action.

129. Vidaud and the California Class had to retain counsel to file this action to protect their interests and to assess and collect the civil penalties owed by PepsiCo.

130. Vidaud and the California Class have incurred attorneys' fees and costs in prosecuting this action to recover under PAGA.

**RELIEF SOUGHT**

131. Vidaud pray for judgment against PepsiCo as follows:

    a.    For an order certifying a class action for the California law claims;

    b.    For an order finding PepsiCo liable for violations of California wage laws with respect to Vidaud and all California Class members covered by this case;

    c.    For a judgment awarding all unpaid wages, liquidated damages, and penalty damages, to Vidaud and all California Class members covered by this case;

    d.    For an equitable accounting and restitution of wages due to Vidaud and all California Class members covered by this case;

    e.    For a judgment awarding attorneys' fees to Vidaud and all California Class members covered by this case;

    f.    For a judgment awarding costs of this action to Vidaud and all California Class members covered by this case;

    g.    For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Vidaud and all California Class members covered by this case; and

    h.    For all such other and further relief as may be necessary and appropriate.

Dated: <u>April 22, 2022</u>

Respectfully submitted,

**PARMET PC**

                    */s/ Matthew S. Parmet*

By: _____
           **Matthew S. Parmet**

**Attorneys for Plaintiff**